

# NUMBER 13-17-00419-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

### IN THE INTEREST OF Y.C., A CHILD

**On appeal from the 398th District Court
of Hidalgo County, Texas.**

## MEMORANDUM OPINION

**Before Justices Contreras, Longoria, and Hinojosa
Memorandum Opinion by Justice Hinojosa**

Appellant M.C. (Father) appeals an order modifying the parent-child relationship and appointing appellee A.T. (Mother) joint managing conservator with the exclusive right to designate the primary residence of their ten-year-old daughter Y.C.[1]   By one issue, Father argues that the trial court abused its discretion because there was insufficient evidence of a material and substantial change in circumstances.   We affirm.

---

[1] To protect the identity of the minor child, we refer to the child and her relatives by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West, Westlaw through 2017 1st C.S.); TEX. R. APP. P. 9.8(a).

# I.    BACKGROUND

Mother and Father divorced in 2010.   The trial court later entered a modification order appointing the parents as joint managing conservators and granting Father the exclusive right to designate the primary residence of Y.C.   Mother was granted visitation pursuant to a standard possession order.   Mother later filed a petition to modify the parent-child relationship seeking to be named a joint managing conservator with the authority to designate the primary residence for Y.C.   Father filed a counterpetition asking that Mother have only supervised visitation and no overnight visits.

The petition and counterpetition were tried to the bench.   Father testified that he does electrical work for a living which requires him to travel to job sites throughout Texas and Louisiana.   Sometimes, Father works near his residence in Mission, Texas during the week, allowing him to come home each day.   Increasingly, however, his work schedule requires him to travel to distant locations, some as far away as 600 miles.   When travelling to distant job sites, Father is unable to return home during the week.   While he is away, Father's wife and Y.C.'s paternal grandmother L.C. are the primary caretakers.   Father stated that Mother did not have his mobile phone number for a long period of time.   If Mother wants to talk to her daughter, she has to call L.C.   Father acknowledged that there is a lot of tension between L.C. and Mother.   Father testified that he has not observed anything that would indicate Mother is a bad parent.

Mother testified that she has had several verbal confrontations with L.C. when exchanging possession of her daughter.   She stated that L.C. is rude and does not communicate with her.   Mother stated she is never notified when Y.C. needs medical

care. For a long period, Mother was only able to contact Y.C. through L.C., who would not answer her phone calls.

L.C. testified that Mother once "burned tires"[2] in the front of her house. As a result, L.C. told Mother that she could not pick up Y.C. at the house. L.C. stated that she and Mother later agreed to exchange custody at a nearby convenience store.

Douglas Brooks, a Hidalgo County Sheriff's deputy, testified that he was asked by Mother "on a regular basis" to serve "as an escort between drop-offs and pick-ups of [Y.C.]" Deputy Brooks stated his presence was necessary to ensure that "there wasn't any kind of confrontation between [Mother] and [L.C.]" On one occasion, L.C. expressed that she did not want the exchange of Y.C. to occur at L.C.'s home, which was the location designated by court order. According to Deputy Brooks, the parties later agreed for the exchange to occur at a nearby convenience store.

Federico Soliz, a Hidalgo County Sheriff's deputy, has responded to calls related to "[c]hild custody disputes, pick-up and drop-off of [Y.C.]" Deputy Soliz testified that Father was not present on these occasions. According to Deputy Soliz, L.C. wanted the exchange to occur at a local convenience store, but she never presented a court order authorizing that location. According to Deputy Soliz, both L.C. and Mother would call law enforcement, and the issue always involved disagreement over the location for the exchange of Y.C. In his fourteen years in law enforcement, Deputy Soliz has never received more calls concerning custody than he has from this family.

A third Hidalgo County Sheriff's deputy, Samuel Pena, responded twice to calls

---

[2] We understand L.C.'s allegation that Mother "burned tires" to mean that Mother accelerated her vehicle to such a degree that its tires made a squealing noise.

3

concerning Y.C. On one occasion, he observed Y.C. crying in L.C.'s car. Mother took possession of Y.C. without any issues. On a second occasion, Deputy Pena was called because Mother failed to timely return Y.C. to Father's care.

The trial court granted Mother's petition to modify the parent-child relationship and entered an order designating Mother as joint managing conservator and granting her the exclusive right to designate Y.C.'s primary residence. This appeal followed.

## II. DISCUSSION

By his sole issue, Father argues that "the evidence was legally and factually insufficient to support the trial court's judgment that there was a material and substantial change in the circumstances of the parties[.]"

## A. Standard of Review

We review a trial court's decision to modify conservatorship under an abuse of discretion standard. *Epps v. Deboise*, 537 S.W.3d 238, 242 (Tex. App.—Houston [1st Dist.] 2017, no pet.). In determining whether an abuse of discretion has occurred because the evidence is legally or factually insufficient to support the trial court's decision, we must inquire: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Gonzalez v. Villarreal*, 251 S.W.3d 763, 774 n.16 (Tex. App.—Corpus Christi 2008, pet. dism'd); *In re D.S.*, 76 S.W.3d 512, 516 (Tex. App.—Houston [14th Dist.] 2002, no pet.). The sufficiency review is related to the first inquiry. *In re D.S.*, 76 S.W.3d at 516. If it is revealed in the first inquiry that there was sufficient evidence, then we must determine whether the trial court made a reasonable decision. *Id.*

4

In a legal sufficiency review, we view the evidence in the light most favorable to the finding and indulge every reasonable inference that would support the trial court's findings, crediting favorable evidence if a reasonable factfinder could do so and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827–28. We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. In reviewing the factual sufficiency of the evidence, we examine all of the evidence and set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

Where, as here, the trial court does not file findings of fact and conclusions of law, we infer all necessary findings of fact to support the trial court's order.[3] *BMC Software*

---

[3] Father filed a timely request for findings of fact and conclusions of law and a notice of past due findings of fact and conclusions of law. *See* TEX. R. CIV. P. 296, 297. "[A] trial court must file written findings of fact and conclusions of law when timely requested by a party." *Baltzer v. Medina*, 240 S.W.3d 469, 473 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The trial court's failure to do so is harmful "if the circumstances of the particular case would require an appellant to guess at the reasons for the trial court's decision." *Gen. Elec. Capital Corp. v. ICO, Inc.*, 230 S.W.3d 702, 711 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). In his opening brief, Father contends that findings and conclusions are unnecessary because the trial court "announced its ruling in open court at the conclusion of the modification hearing, and it specifically provided the factual and legal basis for its ruling." In his reply brief, Father inexplicably takes the opposite position, arguing that findings of fact and conclusions of law are necessary for the proper presentation of his appeal. Because Father raises this issue for the first time in his reply brief, it is not properly presented for appellate review. *See* TEX. R. APP. P. 38.3; *Few v. Few*, 271 S.W.3d 341, 347 (Tex. App.—El Paso 2008, pet. denied).

*Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *In re W.C.B.*, 337 S.W.3d 510, 513 (Tex. App.—Dallas 2011, no pet.). When the appellate record includes a reporter's record, the trial court's implied findings may be challenged for legal and factual sufficiency. *In re W.C.B.*, 337 S.W.3d at 513; *Zeifman v. Michels*, 212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied).

## B.    Applicable Law

A trial court may modify the provisions of the divorce decree that provide the terms and conditions of conservatorship or that provide for the possession of or access to a child, if (1) modification would be in the best interest of the child and (2) the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the rendition date of the order being modified. *See* TEX. FAM. CODE ANN. § 156.101(a)(1) (West, Westlaw through 2017 1st C.S.); *Flowers v. Flowers*, 407 S.W.3d 452, 456–57 (Tex. App.—Houston [14th Dist.] 2013, no pet.). In considering whether a change of circumstances has occurred, the trial court compares the evidence of the conditions that existed at the time of the entry of the prior order with the evidence of the conditions that existed at the time of the hearing on the petition to modify. *In re W.C.B.*, 337 S.W.3d at 514. The trial court is not confined to rigid or definite guidelines, but makes a fact-specific inquiry according to the circumstances as they arise. *In re A.L.E.*, 279 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Texas courts have recognized material changes affecting possession and conservatorship as including (1) the marriage of one of the parties, (2) poisoning of the child's mind by one of the parties, (3) change in home surroundings, (4) mistreatment of

6

the child by a parent, or (5) a parent becoming an improper person to exercise custody. *Id.* at 429.

## C. Analysis

We first address Mother's argument that Father "judicially admitted a material and substantial change in circumstances had occurred." According to Mother, Father's judicial admission precludes him from challenging the sufficiency of the evidence on these grounds.

As previously mentioned, Mother and Father both filed petitions to modify, each alleging a material and substantial change in circumstances in relation to possession and access to Y.C. Admissions in trial pleadings are judicial admissions in the case in which the pleadings are filed; the facts judicially admitted require no proof and preclude the introduction of evidence to the contrary. *In re L.C.L.*, 396 S.W.3d 712, 718 (Tex. App.—Dallas 2013, no pet.); *see also Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983). A "judicial admission is conclusive upon the party making it, . . . relieves the opposing party's burden of proving the admitted fact, and bars the admitting part[y] from disputing it." *Hennigan v. I.P. Petroleum Co.*, 858 S.W.2d 371, 372 (Tex. 1993) (per curiam) (quoting *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980)). "This rule is based on the public policy that it would be absurd and manifestly unjust to permit a party to recover after he has sworn himself out of court by a clear and unequivocal statement." *In re A.E.A.*, 406 S.W.3d 404, 410 (Tex. App.—Fort Worth 2013, no pet.). A party's allegation of changed circumstances constitutes a judicial admission of the common element of changed circumstances in the other party's

similar pleading. *Id.*; *In re L.C.L.*, 396 S.W.3d at 718.

This Court has recognized a deviation from this general rule in cases where parties seek modification of wholly different aspects of the parent-child relationship which are governed by different requirements and "circumstances." *See Snider v. Grey*, 688 S.W.2d 602, 606 n.3 (Tex. App.—Corpus Christi 1985, writ dism'd); *see also In re T.A.M.*, No. 13-16-00005-CV, 2017 WL 711636, at *3 (Tex. App.—Corpus Christi Feb. 23, 2017, no pet.) (mem. op.)*.* In *Snider*, the mother claimed that the father judicially admitted changed circumstances for all purposes. *Snider*, 688 S.W.2d at 606 n.3. We disagreed. *Id.* The father pleaded that there was a material change of circumstances which authorized a modification of the mother's visitation privileges, while keeping the custody arrangements the same. *Id.* The mother sought to prove a change in circumstances which warranted changing custody entirely. *Id.* We recognized that the "prerequisite proof to justify modification of visitation is not the same required for a change of custody." *Id.* We therefore did "not agree that the parties' respective pleadings stipulated to the effect that the movant (mother) need not prove up this key element to warrant a change of custody . . . ." *Id.* Thus, pleading one did not result in judicial admission of the other. *See id.* In other words, the parties were not truly discussing a "common element" in "similar pleading[s]." *See In re A.E.A.*, 406 S.W.3d at 410.

This case is indistinguishable from *Snider*. Father's allegation of a material and substantial change in circumstances related to his request to restrict Mother's visitation. Mother's allegation related to her request to change custody entirely. Therefore, Father's pleading did not result in a judicial admission as to an element of Mother's claim.

8

*See id.*; *Snider*, 688 S.W.2d at 606 n.3.

We next turn to Father's argument that the evidence was legally and factually insufficient to support the trial court's finding that there was a material and substantial change in circumstances since the rendition of the trial court's previous order. The trial court was presented with evidence that Father was away from home for longer periods of time due to work obligations. Father's absences increased in duration during the period that he was the primary conservator. As a result, Y.C. was cared for during the week by Father's wife and L.C. Mother did not have Father's phone number and was only able to communicate with L.C., with whom she had a strained relationship. In addition, Father was rarely present when the parties exchanged possession of Y.C. On several occasions, law enforcement was called to facilitate the exchange. *See In re A.L.E.*, 279 S.W.3d at 429 (identifying a change in home surroundings as a substantial and material change in circumstances).

We conclude that this evidence would enable reasonable and fair-minded people to find a material and substantial change in circumstances. *See City of Keller*, 168 S.W.3d 802 at 827–28. We further conclude that such a finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176. The trial court was equipped with sufficient information upon which to exercise its discretion. *See Villarreal*, 251 S.W.3d at 774 n.16. Therefore, we hold that the trial court did not abuse its discretion in modifying the parent-child relationship. *See Epps*, 537 S.W.3d at 242. We overrule Father's sole issue.

9

### III.  CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Delivered and filed the
9th day of August, 2018.